[Cite as *State v. Levengood*, 2016-Ohio-1340.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellant | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2015AP090053 |
| | : | |
| GALEN T. LEVENGOOD | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:            Appeal from the Tuscarawas County
                                    Court of Common Pleas, Case No. 2015
                                    CR 02 0039



JUDGMENT:                           AFFIRMED



DATE OF JUDGMENT ENTRY:             March 22, 2016



APPEARANCES:

For Plaintiff-Appellant:                        For Defendant-Appellee:

TUSCARAWAS CO. PROSECUTOR                        MARK PERLAKY
MICHAEL J. ERNEST                                TUSC. CO. PUBLIC DEFENDER
125 E. High Ave.                                 153 N. Broadway
New Philadelphia, OH 44663                       New Philadelphia, OH 44663

*Delaney, J.*

{¶1}   Appellant state of Ohio appeals from the September 11, 2015 Judgment Entry of the Tuscarawas County Court of Common Pleas granting the motion to suppress of appellee Galen T. Levengood.

### FACTS AND PROCEDURAL HISTORY

{¶2}   The following facts are adduced from the testimony of Officer Wayne Clark, the sole witness at the suppression hearing held July 17, 2015.

{¶3}   On December 20, 2014, around 11:30 a.m., Sierra Burger returned from a trip to Drug Mart to find appellee Galen Levengood unresponsive on the floor of his apartment.  Burger called 911 and New Philadelphia police and E.M.S. responded.

{¶4}   Ptl. Clark arrived to find squad members already working on the unresponsive male laying on the floor of the apartment's kitchen.  Clark did not immediately identify the man and did not know the reason why the man was "in full arrest." From his entry point into the apartment, Clark could see into the kitchen but not into the bedroom.  Clark testified, "At that point I decided to do a protective sweep of the residence for our safety and for the safety of others."

{¶5}   Clark testified his purpose in performing the protective sweep was twofold, to determine whether anyone else was in the apartment 1) who might pose a threat to officers and E.M.S. and 2) who might be injured.  He proceeded to look anywhere in the apartment a person might be found.

{¶6}   In addition to the E.M.S. squad, also present in the apartment were Sierra Burger and James Wilson.  Burger let Clark into the apartment and Wilson was in the living room watching television.  Sgt. Williamson arrived on the scene shortly after Clark.

During the protective sweep, Clark and Williamson went in opposite directions, with Clark entering the apartment bedroom. He observed a brown powdered substance on a counter in the bedroom with needles nearby. Believing the substance to be heroin, Clark seized it. The substance was submitted to B.C.I. and tested positive as heroin.

{¶7} After the protective sweep, Clark learned from E.M.S. that appellee was unresponsive due to a heroin overdose and medics administered Narcan to him. Appellee was transported to a hospital from the scene.

{¶8} A landlord arrived while police were present and stated the apartment belonged to appellee Galen Levengood.

{¶9} Appellant was charged by indictment with one count of possession of less than one gram of heroin pursuant to R.C. 2925.11(A) and (C)(6)(a), a felony of the fifth degree. Appellant entered a plea of not guilty and filed a motion to suppress evidence stemming from the protective sweep of his apartment, arguing the medical emergency did not give officers authority to enter the bedroom where they observed the heroin. The matter proceeded to suppression hearing on July 17, 2015, and the parties were permitted to file post-hearing memoranda. By judgment entry dated September 11, 2015, the trial court granted appellee's motion to suppress and excluded the heroin found by police.

{¶10} On September 16, 2015, appellant filed a Certification by Prosecuting Attorney pursuant to Ohio Crim.R. 12(K) and appealed from the trial court's judgment entry of September 11, 2015.

{¶11} Appellant raises two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶12} "I. THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION TO SUPPRESS EVIDENCE AS MEMBERS OF THE NEW PHILADELPHIA POLICE DEPARTMENT WERE PERMITTED TO CONDUCT A PROTECTIVE SWEEP OF APPELLEE'S RESIDENCE."

{¶13} "II. THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION TO SUPPRESS EVIDENCE AS MEMBERS OF THE NEW PHILADEPHIA POLICE DEPARTMENT WERE PERMITTED TO SEIZE THE HEROIN LOCATED IN PLAIN VIEW IN THE APPELLE'S RESIDENCE."

**ANALYSIS**

I., II.

{¶14} Appellant's two assignments of error are related and will be considered together. Appellant argues the trial court erred in sustaining the motion to suppress. We disagree.

*Standard of Review*

{¶15} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145,

675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶16} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See*, Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

{¶17} In this case, appellant argues the trial court incorrectly decided the ultimate issue raised by the motion to suppress. Our standard of review is thus de novo.

{¶18} The parties agree that police had authority to enter appellee's apartment under the medical-emergency exception to the warrant requirement. The issue posed by this case, however, is whether the circumstances permitted Officer Clark to conduct a

protective sweep of the entire apartment. Upon our review of the record, we find insufficient evidence of articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to officers and emergency personnel.

*Entry is Justified*

{¶19} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507 (1967). The exigent-circumstances exception has been recognized in situations of hot pursuit of a fleeing felon, imminent destruction of evidence, the need to prevent a suspect's escape, and risk of danger to the police and others. *United States v. Rohrig,* 98 F.3d 1506, 1515 (6th Cir.1996).

{¶20} Another subset of the exigent-circumstances category is the emergency-aid exception. Courts recognize a community-caretaking/emergency-aid exception to the Fourth Amendment warrant requirement is necessary to allow police to respond to emergency situations where life or limb is in jeopardy. *State v. Dunn,* 131 Ohio St.3d 325, 2012–Ohio–1008, 964 N.E.2d 1037, ¶ 21. In dealing with this exception, "[t]he key issue is whether the officers 'had reasonable grounds to believe that some kind of emergency existed * * *. The officer must be able to point to specific and articulable facts, which, taken with rational inferences from those facts, reasonably warrant intrusion into protected areas.'" *State v. White,* 175 Ohio App.3d 302, 2008–Ohio–657, 886 N.E.2d 904, ¶ 17 (9th Dist.). The emergency justifies the warrantless entry, and, while lawfully present, the police may seize evidence in plain view. See *Thompson v. Louisiana,* 469

U.S. 17, 10 S.Ct. 409, 83 L.Ed.2d 246 (1984); *State v. Buzzard,* 112 Ohio St.3d 451, 860 N.E.2d 1006, 2007–Ohio–373, ¶ 16.

{¶21} In this case, Officer Clark had reasonable grounds to believe an emergency existed, justifying his entry into the apartment. See, *Thacker v. City of Columbus*, 328 F.3d 244, 254 (6th Cir.2003) [the uncertainty of the situation, justified entry to secure the safety of the police, paramedics, and other people possibly inside the home]. The 911 call regarding an unresponsive male is a typical medical emergency justifying the officers' entry into the apartment.

*Protective Sweep Not Justified on this Record*

{¶22} Warrantless entry based upon exigent circumstances is not without limitation. A warrantless search must be "strictly circumscribed by the exigencies which justify its initiation." *Terry v. Ohio*, 392 U.S. 1, 26, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Once inside, the question becomes whether the "movements of the officers were conservative, prudent and reasonable." See, *State v. Applegate*, 68 Ohio St.3d 348, 349-50, 1994-Ohio-356, 626 N.E.2d 942 (1994). Appellant argues the officer's actions in entering the bedroom are justified as a "protective sweep."

{¶23} The question remains whether Clark's protective sweep of the apartment, including the bedroom where the heroin was found, is justified by the circumstances of an unresponsive male on the floor in the kitchen. The "protective sweep" exception to the warrant requirement arose from the decision of the U.S. Supreme Court in *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), holding that the Fourth Amendment permits a properly-limited protective sweep when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be

swept harbors an individual posing a danger to those on the arrest scene. The Court cautioned that:

> * * * *. We also hold that as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene. This is no more and no less than was required in *Terry* [392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] and *Long* [463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)]*,* and as in those cases, we think this balance is the proper one.
>
> *Maryland v. Buie*, 494 U.S. 325, 334, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990).

{¶24} The "protective sweep" is further limited to a "cursory inspection of those spaces where a person may be found" and "lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Buie*, 494 U.S. at 336.

{¶25} The question is whether the circumstances support an officer's belief that others might be present, a question which turns upon the facts of each case. In *State v.*

*Lyons*, the defendant was arrested in connection with a major narcotics operation; other suspects were known to be at large; the defendant appeared to be under the influence of drugs when he came to the door; he failed to respond when officers asked if anyone else was present; it appeared a party had recently taken place; and police observed several firearms. *State v. Lyons*, 83 Ohio App.3d 525, 615 N.E.2d 310 (2nd Dist.1992). The appellate court found the circumstances presented a sufficient and articulable suspicion necessary for the protective sweep that officers performed which yielded contraband discovered in an upstairs closet. Id. at 534.

{¶26} The same court distinguished circumstances in another case in which a defendant who was reported to have a firearm and to be suicidal was arrested on a domestic violence charge after an hours-long standoff in which police had observed the residence. *State v. Sharpe*, 174 Ohio App.3d 498, 2008-Ohio-267, 882 N.E.2d 960 (2nd Dist.). An officer testified the protective sweep was performed to "check for the safety and welfare of any other individuals that may have been involved or been inside the house because of the possible possession of a weapon, the threat of self-harm to defendant, and the violence of the incident that occurred earlier against his girlfriend." Id. at ¶ 10. The court found the officers lacked a reasonable and articulable suspicion that other persons who might pose a danger to the officers remained inside the house:

> The protective-sweep exception to the warrant requirement in *Buie* and *Lyons* requires some positive indication that another person or persons remain in the residential premises where a subject is arrested and that they pose a threat to the safety of officers or others. Lacking that indication, there is not a need to act sufficient to

avoid the requirement of a prior warrant if the house is to be searched after a defendant's arrest there. Mere suspicion that a weapon remains inside is insufficient. Likewise, not knowing whether anyone else is there is an insufficient pretext because the need for protection necessarily implies that another person or persons are there. Faced with such doubts, and absent any reason to believe that other persons may be inside, officers must obtain a warrant before they conduct a search of a defendant's house after a defendant's arrest there.

State v. Sharpe, 174 Ohio App.3d 498, 2008-Ohio-267, 882 N.E.2d 960, ¶ 46 (2nd Dist.).

{¶27} We find the rationale of Sharpe to be applicable here. In case sub judice, Clark had no positive indication others might be present in appellee's apartment, and the fact that he didn't know whether anyone else was present is not a sufficient pretext to sweep the entire apartment. See, State v. Mickey, 8th Dist. Cuyahoga No. 82844, 2003-Ohio-6878, ¶ 18 [no persuasive evidence of any information that area to be swept harbored an individual who posed a threat when officer testified he had no knowledge of who lived in the apartment or who might be present]; State v. Walters, 9th Dist. Summit No. 23795, 2008-Ohio-1466, ¶ 13 [protective sweep not justified when no officer testified anything observed in home suggested another person was present]; State v. White, 175 Ohio App.3d 302, 2008-Ohio-657, 886 N.E.2d 904, ¶ 24 (9th Dist.) [record does not contain evidence that the officers had any reason to believe that anyone other than defendant was inside the house]; State v. Martin, 8th Dist. Cuyahoga No. 82026, 2003-

Ohio-4058, ¶ 13 [only officer to testify admitted there was nothing to suggest any threat of danger when he searched the upstairs bedroom]; *State v. McLemore*, 197 Ohio App.3d 726, 2012-Ohio-521, 968 N.E.2d 612, ¶ 13 (2nd Dist.) ["not knowing whether anyone else was inside the residence is an insufficient pretext for a protective sweep to learn whether anyone is in fact inside"].

{¶28} Appellant has separately assigned as error the issue of whether the heroin seized was in plain view. The plain view doctrine only applies if officers were lawfully present in order to see the contraband. Under the plain view exception to the search warrant requirement, police may seize evidence in plain view during a lawful search if (1) the seizing officer is lawfully present at the place from which the evidence can be plainly viewed; (2) the seizing officer has a right of access to the object itself; and (3) the object's incriminating character is immediately apparent. *State v. Justice*, 5th Dist. Fairfield No. 10 CA 41, 2011-Ohio-4004, ¶ 34, citing *Horton v. California*, 496 U.S. 128, 136–37 (1990). Because the protective sweep was unlawful, law enforcement was not lawfully present in the bedroom to view the heroin. Thus, the seizure of the heroin is not protected under the plain view doctrine. *State v. Greene*, 10th Dist. Franklin No. 96APA11-1591, 1997 WL 358810, *3 (June 30, 1997).

{¶29} We are charged with independently determining, without deference to the trial court's conclusion, whether the facts before us on the record meet the appropriate legal standard. *State v. Fisher*, 5th Dist. Fairfield No. 13CA35, 2014-Ohio-3029, ¶ 44, citing *State v. Curry,* 95 Ohio App.3d 93, 96, 620 N.E.2d 906 (8th Dist.1994). We must conclude the facts in this record do not support the protective sweep. We concur with the trial court's determination that law enforcement under these circumstances exceeded its

authority to conduct a protective sweep of the entire apartment. The warrantless entry into the bedroom is not supported as a protected sweep and thus the officer was not lawfully present when he observed the heroin in the bedroom. The trial court properly granted appellee's motion to suppress.

## CONCLUSION

{¶30} Appellant's two assignments of error are overruled and the judgment of the Tuscarawas County Court of Common Pleas is affirmed.

By: Delaney, J. and

Farmer, P.J.

Gwin, J., concur.