[Cite as *State v. McLaughlin*, 2022-Ohio-1227.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Earle E. Wise, Jr., P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2021 AP 07 0017 |
| MARCUS L. McLAUGHLIN | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common
Pleas, Case No. 2019 CR 08 0371

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      April 12, 2022

APPEARANCES:

For Plaintiff-Appellee

KRISTINE W. BEARD
ASSISTANT PROSCUTOR
125 East High Avenue
New Philadelphia, Ohio 44663

For Defendant-Appellant

MARK A. PERLAKY
ASSISTANT PUBLIC DEFENDER
203 Fair Avenue NE
New Philadelphia, Ohio 44663

*Wise, John, J.*

{¶1}   Appellant Marcus McLaughlin appeals his convictions on two counts of Operating a Motor Vehicle While Under the Influence, one count of Driving Under Suspension, and one count of Obstructing Official Business, following a plea of no contest in the Tuscarawas County Court of Common Pleas.

{¶2}   Appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶3}    The relevant facts and procedural history are as follows:

{¶4}   On August 29, 2019, Appellant Marcus McLaughlin was indicted by the Tuscarawas County Grand Jury on two counts of Operating a Vehicle Under the Influence of Alcohol, a Drug of Abuse or a Combination of them, in violation of R.C. §4511.19, each felonies of the third degree, one count of Driving Under Suspension or in Violation of a License Restriction, a violation of R.C. §4510.11(A), a misdemeanor of the first degree, and one count of Obstruction of Official Business, in violation of R.C. §2921.31, a misdemeanor of the second degree.

{¶5}   On February 21, 2020, Appellant filed a Motion to Suppress, arguing that the traffic stop was unconstitutional because the warrantless seizure was based upon an anonymous citizen informant tip that was not reliable.

{¶6}   On August 10, 2020, the court conducted a suppression hearing. At the hearing the State presented the testimony of two witnesses: Crystal Beckett, an employee of Mickey Mart, and the responding officer, Officer Connor Bailey. The citizen informant did not testify because the citizen had never been identified.

**{¶7}** Appellant failed to appear at the hearing and did not present any evidence on his behalf.

**{¶8}** The evidence presented at the hearing established the following facts:

**{¶9}** On April 13, 2019, Crystal Beckett was working at the Mickey Mart in the Village of Strasburg. Mickey Mart is a convenience store with an attached Taco Bell. A customer from Taco Bell told Beckett that he had seen a person there who was stumbling, falling down and about to get into the driver's side of a vehicle. Becket called the Strasburg Police Department and relayed the information she had received from the customer including the color, make, model and license plate number of the vehicle. Beckett testified that she was not familiar with the customer and did not know his identity. (Supp. T. at 6-11).

**{¶10}** Officer Bailey testified that while he was issuing a citation at another location, he received the call from dispatch. (Supp. T. at 21). Dispatch provided the vehicle's description and license plate number and advised that it was a possible drunk driver. (Supp. T. at 22). As the officer was responding to the scene, he was advised that the vehicle was heading his direction. He pulled into a business driveway and waited for the vehicle. (Supp. T. at 25). Officer Bailey spotted a vehicle that fit the description, confirmed that the license plate number was a match and followed the vehicle for nearly four blocks until the vehicle turned into a Circle K lot. Officer Bailey testified that as he followed the vehicle, he observed the vehicle swerving back and forth between the marked lanes - a violation of a Strasburg Village Traffic Ordinance. Officer Bailey testified that as the vehicle turned into the Circle K lot, he turned on his lights to effectuate a traffic stop.

**{¶11}** After the presentation of evidence, the trial court gave both parties an opportunity to supplement their arguments. In its supplemental memorandum, the State argued that the traffic stop was properly based upon the officer's personal observation of a traffic violation, and that the unidentified citizen informant's tip had an indicia of reliability sufficient to support a traffic stop for OVI. Appellant argued that the officer testified that the sole reason for the traffic stop was that Appellant had been identified by a citizen informant as possibly operating a motor vehicle under the influence. Appellant argued that the citizen tip was unreliable and insufficient to justify the warrantless seizure.

**{¶12}** By Judgment Entry filed October 14, 2020, the trial court overruled Appellant's Motion, setting forth the following findings of fact and conclusions of law:

1. ***

2. Around 4:00 p.m., a customer entered the Mickey Mart from the Taco Bell The customer approached Becket and told her that he had seen someone in the Taco Bell who was stumbling around and fell down and that this person was about to get into the driver's side of a vehicle, Becket did not recognize the customer making the report, and she did not inquire about or learn his identity.

3. Based on the customer's report, Becket called the Strasburg Police Department and spoke with the dispatcher while the customer stood beside her. Becket told the dispatcher that someone appeared to be about to drive away from the Mickey Mart, and they were possibly drunk. The customer gave Becket the make, model and color of the subject car, as well

as the license plate number of the vehicle. Becket relayed this information to the dispatcher. ***

6. *** Officer Bailey received a dispatch from Central Dispatch informing him of the suspected OVI in the Village of Strasburg. ***

9. *** a vehicle matching the dispatcher's description passed officer Bailey, and he turned onto Wooster Ave. behind the vehicle. Officer Bailey confirmed with the dispatcher that he was following the same vehicle referenced in the dispatch.

10. As Officer Bailey began to follow the vehicle, he observed that the vehicle was weaving within the marked lanes, and this continued throughout the time he was following him. The vehicle came close to, but did not cross over, the center line. Officer Bailey was planning to follow the vehicle for further observation. However, approximately three or four blocks after Officer Bailey began to follow the vehicle, it turned into a Circle K ****.

{¶13} The trial court concluded as follows:

[A]lthough Crystal Beckett was an identified citizen, the information provided by her was from an anonymous informant. Consequently, the tip relayed to Officer Bailey by the dispatcher was less reliable than if Beckett had personally observed the Defendant.

[T]herefore, *** the tip relayed to Officer Bailey by dispatch was insufficient alone to produce a reasonable suspicion to justify an investigatory stop of Defendant in the absence of observations by Officer Bailey to suggest that the Defendant was committing an offense. ***

\*\*\* § 72.021(B) of the Village of Strasburg Traffic Code provides that "[no] person shall operate a motor vehicle on any street or highway in a weaving or zigzag course unless such regular course is necessary for safe operation in compliance with law.

\*\*\* Officer Bailey testified that the Defendant's vehicle was weaving in his lane before pulling into the Circle K.

\*\*\* [T]herefore the traffic stop at issue was lawful based upon Officer Bailey's observations of Defendant violating §72.021(B) of the Village of Strasburg Traffic Code. \*\*\*

(October 14, 2020 JE at 16).

**{¶14}** On May 11, 2021, Appellant entered a plea of no contest to the charges as contained in the indictment.

**{¶15}** By Judgment Entry filed July 21, 2021, the trial court sentenced Appellant to twenty-four (24) months in prison.

**{¶16}** Appellant now appeals, assigning the following error for review:

<u>ASSIGNMENT OF ERROR</u>

**{¶17}** "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE IN THE CASE BECAUSE THE CITING OFFICER DID NOT HAVE REASONABLE SUSPICION OR PROBABLE CAUSE TO STOP APPELLANT AND/OR HIS VEHICLE."

I.

**{¶18}** In his sole Assignment of Error, Appellant argues that the trial court erred in denying his motion to suppress. We disagree.

**{¶19}** Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

**{¶20}** There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See*, Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's

conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

**{¶21}** In the instant case, Appellant argues the officer lacked reasonable and articulable suspicion for the traffic stop.

**{¶22}** The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). An investigative stop, or *Terry* stop, is a common exception to the Fourth Amendment warrant requirement. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Because the "balance between the public interest and the individual's right to personal security" tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity "may be afoot." *United States v. Brignoni– Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).

**{¶23}** In *Terry,* the Supreme Court held that a police officer may stop an individual if the officer has a reasonable suspicion based upon specific and articulable facts that criminal behavior has occurred or is imminent. See, *State v. Chatton,* 11 Ohio St.3d 59, 61, 463 N.E.2d 1237 (1984). The propriety of an investigative stop must be viewed in light of the totality of the circumstances surrounding the stop "as viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews,* 57 Ohio St.3d 86, 87–88, 565 N.E.2d 1271 (1991); *State v. Bobo,* 37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988). The Supreme Court of the

United States has re-emphasized the importance of reviewing the totality of the circumstances in making a reasonable-suspicion determination:

> When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." Although an officer's reliance on a mere "hunch" is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.

{¶24} *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), citing *United States v. Cortez,* 449 U.S. 411, 417–418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

{¶25} In the instant case, the officer stopped Appellant after receiving a call from dispatch about a possible drunk driver and then personally observing Appellant weaving within marked lanes.

{¶26} Appellant, in his brief, argues only that the officer in this case did not have reasonable suspicion to stop him based on an unreliable tip from an anonymous citizen informant.

**{¶27}** In ruling on a motion to suppress, a trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Kopp*, 5th Dist. No. 16-CA-96, 2017-Ohio-4428, 93 N.E.3d 199, ¶ 21, *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist. 1994), internal citation omitted. We are charged with independently determining, without deference to the trial court's conclusion, whether the facts before us on the record meet the appropriate legal standard. *State v. Levengood*, 5th Dist. No. 2015AP090053, 2016-Ohio-1340, 61 N.E.3d 766, ¶ 29, citing *State v. Fisher,* 5th Dist. Fairfield No. 13CA35, 2014-Ohio-3029, 2014 WL 3372484, ¶ 44, internal citation omitted.

**{¶28}** Upon our review of the record, we find evidence in the record, in the form of the officer's testimony, supporting the traffic stop. Officer Bailey testified that after receiving the call from dispatch, which included the vehicle's description and license plate number, he personally observed Appellant's car swerving within marked lanes for about four blocks, a violation of a Strasburg Village Traffic Ordinance.

**{¶29}** Traffic stops based upon observation of a traffic violation are constitutionally permissible. *Dayton v. Erickson,* 76 Ohio St.3d 3, 11–12, 1996-Ohio-431, 665 N.E.2d 1091. This Court has held that any traffic violation, even a *de minimis* violation, may form a sufficient basis upon which to stop a vehicle. *State v. Bangoura,* 5th Dist. No. 08 CA 95, 2009-Ohio-3339, 2009 WL 1916902, ¶ 14, citing *State v. McCormick,* 5th Dist. No. 2000CA00204, 2001 WL 111891 (Feb. 2, 2001); *State v. Woods*, 5th Dist. Licking No. 12-CA-19, 2013-Ohio-1136, 2013 WL 1209351, ¶ 60.

**{¶30}** While testimony was also presented by Crystal Beckett, the Mickey Mart employee, regarding the information relayed to her from an unidentified customer about

a person they witnessed stumbling, falling down and getting in to the driver's side of a vehicle, the trial court found that such evidence was "less reliable than if Beckett had personally observed the Defendant" and "was insufficient alone to produce a reasonable suspicion to justify an investigatory stop of Defendant in the absence of observations by Officer Bailey to suggest that the Defendant was committing an offense." (October 14, 2020 JE at 15).

**{¶31}** As noted *supra*, the trial court was in the best position to determine the officer's credibility; our role is to determine whether sufficient facts are in the record to support the trial court's conclusion.

**{¶32}** Under the totality of the circumstances, we find that the officer had reasonable and articulable suspicion to stop Appellant's vehicle based on his observation of a traffic offense. The trial court therefore did not err in overruling Appellant's motion to suppress.

**{¶33}** Appellant's sole assignment of error is overruled.

**{¶34}** The judgment of the Court of Common Pleas, Tuscarawas County, Ohio, is affirmed.

By: Wise, John, J.
Wise, Earle, P. J., and
Baldwin, J., concur.

JWW/kw 0408